Next case is Clyde Branson v. Advantage Real Estate. Mr. Morris. Good morning. Sorry to keep this short. Yeah. This case is another contract expression case, and I'll speak more for that. This case is Monroe County. My client is Advantage Real Estate. After a bench trial, the trial judge on that ruled against my client. This is a contract case. It involves an employment agreement between my client, Advantage Real Estate, and Jeanette Branson. Mrs. Branson passed away, and the defendant's case is her husband, which is her successor in interest in terms of that. This contract involved my client as a real estate agency. They hired Mrs. Branson in 2007 to be a realtor in their office. They entered into an agreement. The issue in this case involves the payment under the terms of that agreement. She was a three-year agreement. She received $30,000, $5,000 down, $1,000 a month over a 25-month period, plus she got commission, plus she got bonuses. Unfortunately, Mrs. Branson shortly after she entered into the contract became ill, had surgery, became ill again, had some more surgery. Essentially, she died a little over two years into the contract. During the term of the contract, she worked approximately 11 months. She was paid $12,000, a little bit above the balance of $30,000. And she died. She was not paid the balance. Shortly after her death, the plaintiff filed a suit requesting a balance of the contract. The court had an extra trial on the case. The plaintiff in the case, this is another entry case where I'm concerned, the plaintiff in that case presented two witnesses, would be her husband, who testified that it was her signature on the contract, and she should be called an officer of my client as a witness, and essentially introduced the contract and tried to elicit the $30,000 amount of payment for her employment, but it came for a covenant not to repeat, and or the acquisition of her business. Essentially, after that, the court made a determination that there was ambiguity in the contract. In other words, the judge couldn't decide. He made a finding on the record. I can't determine whether or not this payment is for actually work, or is it for the covenant to be, or is it for the acquisition of a business. The specific findings in my brief, it's in the record, too. It's very short. He just basically said at that point in time, if you want to put on parole evidence or expensive evidence, prove that's fine. The plaintiff declined to do so. My client, on our behalf, we put on evidence. He specifically said without any question it was the intent of the parties. The money, the $30,000, was for her pay. That she wasn't required to work a full three years because it was a three-year contract, and that she didn't perform the obligations of her conduct, albeit because, obviously, the circuit eventually passed away. Following all of the evidence, the judge ruled against our client. And we think the judge is wrong for two reasons. One, under the rules of construction, if court were to find ambiguity, and ambiguity exists under the rules of construction, any ambiguity must be resolved against the drafter. And in this case, there's no question that the drafter of this agreement was the plaintiff's attorney. He drafted the agreement. He presented the agreement. It was signed. And so if there's an ambiguity and the court couldn't decide that ambiguity based upon the evidence, we believe the law is clear. The Supreme Court has indicated in the Dalton Law, which followed a series of lines of cases in the Supreme Court, that that, in fact, is the rules of construction. So two reasons here. One, the court found, and it was clear from the court's order, that there's an ambiguity, and that ambiguity was not resolved by the performance of the instrument, which he could figure out. So we put on full evidence. The evidence is uncontradicted. The plaintiff put on absolutely no evidence, if it were but to the evidence that was presented by the defendant in this case. Absolutely not. So the bottom line is the only evidence that was presented by the defendant, and the defendant was clear on what the purpose of $30,000 was. If the court still thought there was an ambiguity, and it may be from his order, that's what he thought, then I think the rules of construction apply. If that is the case, if there's an ambiguity, it goes against the drafter of that agreement. But just as clear as can be, the Supreme Court made that clear. It seems that the court made some inferences on the contract in its order, about the $30,000 being for the purchase of business. That's right, yes. And looked that it wasn't paid over the 3-year period, but rather through 26 months. That's correct. And where did that inference come from? Well, the contract, there's a recital in the contract that says that Mrs. Branson is going to shut down her business and she's going to come work for them. In the contract, and again, we didn't draft the contract. That's the problem here. But there's some inferences in the recital that she has a business that she shut down and she's coming here. But the testimony, though, which is really why we're here, is we didn't get any assets from her. In other words, we didn't get any tables, we didn't get any chairs, we didn't get anything. We got her. And she was a good salesman. That's why we wanted her. Did you get her listings? In the contract, it provides for certain listings that were coming to her. If you look at the contract, or handwritten on the bottom, any sales that she had prior to that time all go to her. In other words, we're not getting any pending contracts or anything like that. And the testimony was we got absolutely maybe two transactions out of that whole deal. Well, she got paid too, by the way. How do you get $5,000? Pardon me? Why do you give $5,000? No, that was part of her contract when the tithes started to come. In other words, the work force. But it's a three-year deal. You know, most times, in real terms, they're pulling it well. I mean, they're just gone. This is somebody they wanted to have there, but they wanted her to work three years. So I don't think there's any question about that. Or $30,000. Pardon me? Because they won $30,000 apart and gave her the $5,000 now and give her $25,000 the next three years. The next $25,000, though, was $5,000 down and $25,000 the month before until I was paid the full $30,000. That's correct. That's the way the agreement reads. So the other thing, the other issue is if the rules were freshened by then, the decision was clearly just a matter of ways of the evidence. There's no other evidence to suggest that. The plaintiff put on the what? Absolutely no other witness. The only witnesses on there were the officer of the defendant and her husband, who testified for about two sentences. And that's it. There's no other evidence to support the claim under the complaint. You know, it's a breach of contract claim. Did she perform her obligations on the term of the contract? Clearly, that was the testimony that she did not. And why? The judge had a little trouble because, in fact, she passed away, which was unfortunate. We like this person. It's not the problem here. It's just that she worked 11 months out of a three-year period. That's really what it comes down to. And she was paid for those 11 months. It wasn't a coincidence that she got, what, roughly $12,000 over approximately 12 months. That is what happened, and without any question, that's exactly what happened. But that's it in a nutshell. Thank you. Thank you. Good morning. Good morning. The situation was that my client, Jeanette Branson, or five Bransons, with Jeanette Branson, shut down her business. She made her assets available to these folks and agreed to work with them for three years. And in return, they offered to, it's almost like a sign-on bonus, although nobody ever used that term, but it was like a sign-on bonus, $5,000 the first month, $1,000 a month to the next 25. And she did, in fact, work 25 months on and off. But they stopped paying her not after, I think, he said 12 months. They actually paid her $17,000. I guess that's $5,000 in 12 months. But she continued working there, and the payment for her services, for her real estate work, was compensated differently. You know, when she made a sale, she got a percent of the sales, just like any other real estate agent does. But she also got the $1,000 a month, and the officer from Advantage Real Estate could not explain why she was getting $1,000 a month. And he couldn't say, in fact, he couldn't say whether or not, I think he said that no one else got that. All their other agents just obtained a percentage cut of their sales. So she had a specific deal that was different from everybody else's, and their witness, rather than the person that represented their company, couldn't explain why not. He also, when we had two bench trials, actually, and the first one, he didn't appear very knowledgeable. He stated that he was just familiar with the contract. He didn't really work there. But the second bench trial comes around, and he testified that he's right there working through the contract with them while they're doing it, but he was basically involved with the day-to-day operations. So those inconsistent statements, I think, led to the judge's decision, at least in part, that when someone's talking about someone's conversations and so forth who has passed away, that their testimony should be scrutinized very closely. And I think the judge applied the proper amount of scrutiny and discounted the weight of the evidence that the testimony that that fellow gave, and that's why he arrived at the decision that he did, that they still owe my client money. Do you have any questions? There was no testimony by the attorney who drafted the contract. That's correct. I believe the attorney, frankly, my client, Clive Branson, was confused on that point, and so I never listed a testimony. And that's why there's nothing in there. But the attorney that actually drafted the contract, no, we didn't. How many months did she get, just $1,000 every month? It was supposed to be $25,000, but she got $5,000 up front and then an additional $4,000. For an additional four months after that. So she got $17,000 altogether. And they still owe, no, they still owe her $12,100. They gave it not in months. $13,000 now or $17,000? They still owe her $12,000. So they gave her about $18,000. Okay. And it wasn't all in monthly payments of $1,000. It was a little more sporadic than that, but basically it was over time. Thank you so much. You're welcome. Mr. Morris, do you have any other comments? The problem with the argument they're making is, first of all, she shut down her business. There's no evidence in the record other than her selling. She shut down her business and came to work there. That's the problem with this case. They put on no evidence. It's like a signing clause. There's no evidence of a signing clause. They put on absolutely nothing to say that. Right. And the good question is, they did not put on the draft of the agreement. And clearly we couldn't because of the attorney filing privilege. And we tried to get it to the intent of the parties. If you look at the record, of course, they raised it up and asked for it. And we couldn't get into those conversations going back and forth. That's the fact. We have an evidence case to look at, and lack of evidence is what it is. The burden's on the plaintiff in this case, not on the defendant. They put on nothing. They just submitted the contract. How did she get $5,000? She got $5,000 under the terms of the contract on June 1, 2007. She was supposed to get $30,000. Right. She got her commission. She got other bonuses. For example, she brought in other people. There's a variety of ways she could have got paid. But she got $30,000. She got $5,000 done and $1,000 a month for a period of 25 months, which she should have done, had she continued to work. What happened is she got sick right away. So she got her $5,000. She got sick. She came back a little bit, but gave her $1,000 a month. They tried to work with her. There's a little bit that came down through. She got sick again. Then she came back and worked a little bit. She got another $1,000 a month. And eventually she passed away, which is unfortunate. It really is. But the bottom line is that she didn't complete. And, of course, there was no complaints to her at that time, you know, that she wasn't what she said. So that's really what it comes down to. But there's no evidence of all these issues they're raising. That's what it is. There's a record. We're saying, based upon the manner in which the evidence is presented at trial, there's no doubt that they didn't prove their case. You know, the court raises, if you look at the court's order, Judge Doyle, and I respect him very much, but he has questions in his order. You know, what is this money for? He has a question mark in the final order. Well, he didn't, obviously, there's still an ambiguity there, which comes to the fact that if he fully felt there was an ambiguity, then the court has to resort to the rules of construction, contracts. And if it's drafted, it has to be resolved in favor against the drafter, not the person who did it. So that's really, it's just really what the law is. The Supreme Court is clear on that. Unless you have any other questions, I have three questions. Thank you. Thank you. This matter will be taken under advisement. Thank you, gentlemen.